UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

JEFFREY FARKAS, M.D., LLC,

                    Plaintiff,

          v.

1199SEIU NATIONAL BENEFIT FUND,

                    Defendant.

-----------------------------------------------------------------

**MEMORANDUM & ORDER**
25-CV-57 (MKB)

MARGO K. BRODIE, United States District Judge:

I.    Background ...................................................................................................... 2

   a.   Overview of the NSA ................................................................................. 4

      i.    Process for payments and resolution of payment-related disputes between providers and insurers .................................................................................. 6

      ii.   Agency implementation and oversight ......................................................... 10

   b.   Plaintiff's IDR process .............................................................................. 11

II.   Discussion ..................................................................................................... 12

   a.   Standards of review .................................................................................. 12

      i.    12(b)(1) ................................................................................................. 12

      ii.   Article III standing .................................................................................. 13

      iii.  Motion to confirm arbitration award ........................................................... 15

      iv.  Subject-matter jurisdiction under the FAA ................................................... 16

   b.   Plaintiff lacks standing to enforce the IDR Award ...................................... 18

      i.    Plaintiff has no standing under the NSA to challenge the denied claim ...................... 20

      ii.   Plaintiff lacks standing under the FAA to enforce the IDR Award ............................ 22

         1.   The FAA does not independently confer jurisdiction .................................... 23

         2.   Congress did not incorporate Section 9 of the FAA into the NSA .......................... 24

         3.   The NSA does not include an implied private right of action that incorporates Section 9 of the FAA .............................................................................. 26

   c.   Defendant's motion to vacate the IDR award and Plaintiff's cross-motions to confirm the IDR Award ...................................................................................... 32

III.  Conclusion ................................................................................................... 36

Plaintiff Jeffrey Farkas, M.D., LLC commenced this action on January 3, 2025 against Defendant 1199 SEIU Benefit Fund pursuant to the No Surprises Act, 29 U.S.C. § 1185 *et seq.* ("NSA") and the Federal Arbitration Act, 9 U.S.C § 9 ("FAA"), to confirm an independent dispute resolution ("IDR") award ("IDR Award"), (Compl., Docket Entry No. 1), rendered on January 29, 2024, (*id.* ¶ 16). Plaintiff also seeks attorneys' fees and costs. (*Id.* at 6.)

Defendant moved to dismiss the Complaint for lack of standing and failure to state a claim; Plaintiff opposed the motion and cross moved to confirm the IDR Award; and Defendant filed a cross-motion to vacate the IDR Award.[1] For the reasons discussed below, the Court grants Defendant's motion to dismiss this case and denies Plaintiff's cross-motion to confirm the IDR Award.

## I.    Background

Plaintiff is a medical practice with its principal place of business in the state of New Jersey and is "comprised of a team of neurologists who specialize in acute treatment following strokes, brain aneurysms, carotid disease, and vascular problems of the brain, spine, and neck." (Compl. ¶¶ 1, 5.)

Defendant is a "non-profit organization and multi-employer trust fund established in accordance with Section 186(c) of the Labor Management Relations Act of 1947 and an 'employee welfare benefit plan' as that term is defined in Employee Retirement Income Security

---

[1] (Def.'s Not. of Mot. to Dismiss ("Def.'s Mot."), Docket Entry No. 18; Def.'s Mem. in Supp. of Def.'s Mot. ("Def.'s Mem."), Docket Entry No. 20; Pl.'s Not. of Cross-Mot. to Confirm Arb. Award ("Pl.'s Cross-Mot."), Docket Entry No. 21; Pl.'s Mem. in Opp'n to Def.'s Mot. and in Supp. of Pl.'s Cross-Mot. ("Pl.'s Opp'n"), Docket Entry No. 23; Def.'s Not. of Cross-Mot. to Vacate IDR Determination ("Def.'s Cross-Mot."), Docket Entry No. 26; Def.'s Reply in Supp. of Def.'s Mot., in Opp'n to Pl.'s Cross-Mot., and in Supp. of Def.'s Cross-Mot. ("Def.'s Reply"), Docket Entry No. 28; Pl.'s Reply in Supp. of Pl.'s Cross-Mot. and in Opp'n to Def.'s Cross-Mot. ("Pl.'s Reply"), Docket Entry No. 31; Def.'s Reply in Further Supp. of Def.'s Cross-Mot. ("Def.'s Cross-Mot. Reply"), Docket Entry No. 32.)

Act of 1974, 29 U.S.C. 1001 *et seq*. ('ERISA')."  (Aff. of Shelley Chun ("Chun Aff.") ¶ 3, Docket Entry No. 27.)

On March 8, 2023, Plaintiff performed surgery on a "[p]atient [who] was the beneficiary of a health plan issued or administrated by Defendant" (the "Patient").  (Compl. ¶ 6–7.) According to Plaintiff, it is an out-of- network provider and "does not have a network contract with Defendant that would determine or limit payment for Plaintiff's treatment of Defendant's beneficiaries."[2]  (*Id*. ¶ 10.)  After treating the Patient, Plaintiff submitted a claim form to Defendant seeking payment for six different claims.  (Chun Aff. ¶ 11.)  At issue in this case is Plaintiff's claim for CPT codes 36226-LT[3] for which Plaintiff billed Defendant $37,760.[4]  (*Id*. ¶

---

[2]  "Out-of-network providers are those who have not entered contracts for payment with the insureds' health plans."  *Tex. Med. Ass'n v. U.S. Dep't of Health & Hum. Servs.* 110 F.4th 762, 768 (5th Cir. 2024).

[3]  "CPT is a uniform coding system consisting of descriptive terms and identifying codes used primarily to identify medical services and procedures furnished by physicians and other health care professionals for which they bill public or private health insurance programs." CTRS. FOR MEDICARE & MEDICAID SERVS, *Healthcare Common Procedure Coding System* (HCPCS), https://www.cms.gov/medicare/coding-billing/healthcare-common-procedure-system/ (last visited Mar. 31, 2026).

[4]  Plaintiff submitted a medical bill to Defendant "for a diagnostic procedure that involves placing a catheter into the carotid artery and performing imaging."  (Compl. ¶ 8.)  "Plaintiff sought reimbursement in the amount of $153,840 for its services provided during this surgery," (Chun Aff. ¶ 12; *see* Claim Form, annexed to Chun Aff. as Ex. A, Docket Entry No. 27-1; Explanation of Payment, annexed to Chun Aff. as Ex. B, Docket Entry No. 27-2), and submitted six different claims for the services, (Chun Aff. ¶ 11).  Plaintiff "initiated open negotiation on each of the six claim lines in the [ ] Claim Form."  (*Id*. ¶ 20.)  After open negotiation, Plaintiff initiated four different IDR processes.  (*Id*. ¶ 23; *see* Compl. ¶ 13.)  Defendant paid Plaintiff the full amount directed by the certified IDR entity for two of these claims, (Chun Aff. ¶¶ 24, 27), but challenged the eligibility of two of the claims "on the grounds that the claim[s] [were] denied and thus not eligible for IDR," (*id*. ¶¶ 25, 28–30.)  The certified IDR entity denied Plaintiff's request as to one of the challenged claims because it was ineligible and Plaintiff did not challenge the denial.  (*Id*. ¶ 26.)  However, the certified IDR entity "direct[ed] [Defendant] to proceed with the IDR process on the remaining claim [36226-LT] instead of closing the dispute as ineligible."  (*Id*. ¶ 34.)

3

28; *see* Claim Form; Explanation of Payment.)  Defendant denied CPT-code 36266-LT, (Chun Aff. ¶ 14), and Plaintiff initiated an IDR Process to dispute this denial.  (*Id.* ¶ 25.)  Plaintiff argues that the NSA governs payment for the services billed under 36226-LT because "the services were rendered 'emergently/inadvertently.'"  (Compl. ¶ 11.)

### a.   Overview of the NSA

Congress enacted the NSA as part of the Consolidated Appropriations Act of 2021 to protect patients against surprise medical bills for emergency services rendered by out-of-network providers in an emergency department.[5]  Pub. L. No. 116-260, div. BB, tit. 1, 134 Stat. 1182, 2758–2890 (2020); 42 U.S.C. §§ 300gg-111, 300gg-131, 300gg-132; H.R. Rep. 116-615, at 67 (2020) (outlining the goals of the house bill preceding the NSA as including "end[ing] surprise medical billing"); *see Neurological Surgery Prac. of Long Island, PLLC v. United States Dep't of Health & Hum. Servs.* (*Neurological Surgery Prac.*), 145 F.4th 212, 219 (2d Cir. 2025) ("Congress passed the [NSA] to address the issue of patients facing unexpected — and often exceedingly large — medical bills after they received treatment from out-of-network providers."); *Guardian Flight, L.L.C. v. Health Care Serv. Corp.*, 140 F.4th 271, 273 (5th Cir. 2025) ("Congress enacted the NSA in 2022 to protect patients from surprise medical bills incurred when they receive emergency medical services from out-of-network healthcare providers.").

---

[5]  The No Surprises Act is codified as parallel amendments to three federal statutes with some variations.  *See* 26 U.S.C. § 9816(c) (amending the Internal Revenue Code); 29 U.S.C. § 1185e (amending ERISA); 42 U.S.C. § 300gg-111 (amending the Public Health Service Act); *Tex. Med. Ass'n.*, 110 F.4th at 768 (explaining that the No Surprises Act "provisions occur in triplicate in the United States Code[] because the NSA amended three statutes").  The Court cites to the Public Health Services Act.

The NSA applies to "items or services . . . for which benefits are provided under the plan."  42 U.S.C. § 300gg-132(a); *see* Requirements Related to Surprise Billing; Part I, 86 Fed. Reg. 36,872, 36,891 (July 13, 2021) (explaining that NSA protections are not universal and do not extend to *non-covered* items or services).  Insurers, including group health plans, that provide benefits for services in emergency departments must cover the following emergency services: (1) "medical screening examinations . . . to evaluate [an] emergency medical condition," (2) "further medical examination and treatment . . . to stabilize the patient." and (3) post-stabilization services.[6]  42 U.S.C. § 300gg-111(C).  They must also cover nonemergency services performed by out-of-network providers at an in-network facility and limit the patient's cost-sharing to the in-network amount.  42 U.S. Code § 300gg-132(a).  Insurers are to "cover" the specified emergency and nonemergency services based on in-network cost-sharing requirements and "without regard to any other term or condition of such coverage, (other than exclusion or coordination of benefits . . . )" 42 U.S.C. § 300gg-111(a)(1)(D); *see Tex. Med. Ass'n v. United States Dep't of Health & Hum. Servs.*, 110 F.4th 762, 767 (5th Cir. 2024) ("The No Surprises Act is intended to protect patients from 'surprise' medical bills by 'limit[ing] the amount an insured patient will pay for emergency services furnished by an out-of-network provider." (alteration in original) (quoting Te*x. Med. Ass'n v. U.S. Dep't of Health & Hum. Servs.*, 654 F. Supp. 3d 575, 580 (E.D. Tex. 2023))); *Ass'n of Air Med. Servs. v. U.S. Dep't of Health & Hum. Servs.*, No. 21-CV-3031, 2023 WL 5094881, at *1 (D.D.C. Aug. 9, 2023) ("The [NSA] obligates group health

---

[6]  A group health plan is an employee welfare benefit plan to the extent that the plan provides medical care . . . to employees or their dependents . . . directly or through insurance, reimbursement, or otherwise."  29 U.S.C. § 1191b; *see also Ass'n of Air Med. Servs. v. U.S. Dep't of Health & Hum. Servs.*, No. 21-CV-3031, 2023 WL 5094881, at *4 (D.D.C. Aug. 9, 2023) (defining "group health plan" for the No Surprises Act as "an employee welfare plan that provides medical care for employees and their depending" (citing 42 U.S.C. § 300gg-91(a)(1))).

5

plans and issuers to apply the same cost-sharing levels to out-of-network and in-network emergency services . . . .").  Out-of network providers are prohibited from "balance billing"[7] patients or holding them liable for more than they would have been required to pay under their insurer's cost-sharing requirement for the same services in-network.  42 U.S.C. § 300gg-132(a); *Air Med. Servs.*, 2023 WL 5094881, at *1 (explaining that the NSA "prevents emergency service providers from holding a patient liable for the balance of a bill"); *Kennedy v. UnitedHealth Grp. Inc.*, 25-CV-432, 2025 WL 1725147, at *8 (S.D.N.Y. June 20, 2025) (quoting Air Med. Servs., 2023 WL 5094881, at *1).

### i.    Process for payments and resolution of payment-related disputes between providers and insurers

The NSA "sets deadlines for various steps in the [IDR] process." *Neurological Surgery Prac.*, 145 F.4th at 219; *see Air Med. Servs.*, 2023 WL 5094881, at *3 ("Congress enacted the [NSA] . . . to end 'surprise billing' for patients and to remove them from the middle of payment disputes between the patient's group health plan or issuer and providers."  (citation omitted)); *see also* H.R. Rep. 116-615, at 55 (2020) (stating that "any surprise billing solution must comprehensively protect consumers by taking the consumer out of the middle of surprise billing disputes" (internal quotation marks omitted)).  The process requires the provider to bill the insurer directly for NSA-covered services and the insurer to respond with an "initial payment" or "notice of denial of payment" within thirty days and after determining whether services are covered under the insured's plan. *See Neurological Surgery Prac.*, 145 F.4th at 219 ("[U]pon receiving a request for payment from a provider, the patient's health care plan determines

---

[7]  "Balance billing occurs when a patient is held financially liable for the difference between a provider's billed charge and the allowed amount under a health plan."  H.R. Rep. 116-615, at 48 (2020).

whether and in what amount it will pay for the services" (quoting *Neurological Surgery Prac. of Long Island, PLLC v. U.S. Dep't of Health & Hum. Servs.* (*Neurological Surgery Prac. II*), 682 F. Supp. 3d 249, 255 (E.D.N.Y. 2023)).

The NSA "sets deadlines for various steps in the [IDR] process." *Neurological Surgery Prac.*, 145 F.4th at 219; *see Air Med. Servs.*, 2023 WL 5094881, at *3 ("Congress enacted the [NSA] . . . to end 'surprise billing' for patients and to remove them from the middle of payment disputes between the patient's group health plan or issuer and providers." (citation omitted)); *see also* H.R. Rep. 116-615, at 55 (2020) (stating that "any surprise billing solution must comprehensively protect consumers by taking the consumer out of the middle of surprise billing disputes" (internal quotation marks omitted)). The process requires the provider to bill the insurer directly for NSA-covered services and the insurer to respond with an "initial payment" or "notice of denial of payment" within thirty days and after determining whether services are covered under the insured's plan. *See Neurological Surgery Prac.*, 145 F.4th at 219 ("[U]pon receiving a request for payment from a provider, the patient's health care plan determines whether and in what amount it will pay for the services" (quoting *Neurological Surgery Prac. of Long Island, PLLC v. U.S. Dep't of Health & Hum. Servs.* (*Neurological Surgery Prac. II*), 682 F. Supp. 3d 249, 255 (E.D.N.Y. 2023)).

"If there is a dispute between the healthcare plan and the provider regarding the proper compensation amount," the parties enter a thirty-day open negotiations period beginning the date the provider receives an initial payment or a notice of denial of payment. *Neurological Surgery Prac.*, 145 F.4th at 219 (citation omitted). If open negotiations fail, the provider or insurer may initiate the IDR process within four days of the end of the thirty-day negotiations period by submitting a written notice of IDR initiation to the other party and to the Secretary of Labor. 42 U.S.C.A. § 300gg-111(c)(1)(B); *Guardian Flight LLC v. Health Care Serv. Corp.*, 735 F. Supp.

7

3d 742, 747 (N.D. Tex. 2024) (noting that "the [NSA] establishes a dispute resolution system for when healthcare providers and insurers dispute surprise medical bills"), *aff'd sub nom. Guardian Flight, L.L.C.*, 140 F.4th 271 (5th Cir. 2025). The notice of IDR initiation must include, among other things, the preferred certified IDR entity, an "[a]ttestation that the items and services under dispute are qualified IDR items or services," and a Qualifying Payment Amount. 45 CFR § 149.510 (b)(2)(iii) (The Qualifying Payment Amount is "a heavily regulated rate that reflects the 'median of the contracted rates recognized by the plan or issuer . . . for the same or a similar item or service' offered in the same insurance market and geographic area." *Guardian Flight, L.L.C. v. Health Care Serv. Corp.*, 140 F.4th at 273–74 (citing 42 U.S.C. §§ 300gg-111(a)(3)(E)(i)); *see Air Med. Servs.*, 2023 WL 5094881, at *3 ("The [Qualifying Payment Amount] is essentially the median rate the insurer would have paid for emergency care if it had been provided by an in-network provider or facility."). "[E]ither the parties or the Department of Health and Human Services . . . selects a certified [IDR] entity . . . to referee." [8] *Guardian Flight, L.L.C.*, 140 F.4th at 273 (citing 42 U.S.C. § 300gg-111(c)(4)).

"The parties must submit their compensation proposals within [ten] days of selecting a [certified] IDR entity, and the [certified] IDR entity must then render a decision choosing one of the proposals within [thirty] days." *Neurological Surgery Prac.*, 145 F.4th at 219 (citing 42 U.S.C. § 300gg-111(c)(5)(A) and (B)). The provider and the insurer each offer a payment amount with supporting information, and the certified IDR entity selects one of the two offers considering the Qualifying Payment Amount and other factors specified in the NSA. 42 U.S.C.

---

[8] Certified IDR entities are IDR entities which "meet the standards described in 45 CFR § 149.510]. 45 CFR § 149.510 (e)(1); *see also* 45 C.F.R. § 149.510 (e)–(i)(2) (requiring a certified IDR entity to be independent and free of conflicts of interest, possess relevant expertise in health care billing and reimbursement, maintain the capacity to adjudicate disputes and comply with applicable timelines, and comply with federal oversight, reporting, recordkeeping, and fee requirements).

§ 300gg-111(c)(5)(A)–(C); *Spiel, MD, PA v. Horizon Blue Cross Blue Shield of N.J.*, No. 25-CV-14769, 2025 WL 3459719, at *3 (D.N.J. Dec. 2, 2025) ("The arbitration process is 'baseball-style,' meaning that the provider and insurer each submit a final offer, and the [certified] IDR entity must select one of the two proposed amounts" (internal quotations and citations omitted)); *see also Worldwide Aircraft Servs., Inc. v. Cigna Health & Life Ins. Co.*, No. 25-CV-2393, 2026 WL 234015, at *3 n.4 (M.D. Fla. Jan. 29, 2026) ("The [c]ourt notes that the IDR process at issue here does not require in-person hearings or the filing of briefs" (citing 42 U.S.C. § 300gg-111(c)(5)(A)).  The certified IDR entity's final written decision is binding and "shall not be subject to judicial review" unless it meets one of four bases for vacating arbitration awards under section 10(a) of Title 9 of the FAA.  42 U.S.C. § 300gg111(c)(5)(E)(i)(II); *see Neurological Surgery Prac.*, 145 F.4th at 219 ("That decision is binding on the parties 'in the absence of a fraudulent claim or evidence of misrepresentation of facts presented' and is subject to limited judicial review under the [FAA]." (quoting 42 U.S.C. § 300gg-111(c)(5)(E))).

Under FAA Section 10(a), "[a]n arbitral award may be vacated '(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.'" *Flintlock Constr. Servs., LLC v. Arch Specialty Ins. Co.*, No. 24-791, 2025 WL 573425, at *2 (2d Cir. Feb. 21, 2025) (quoting 9 U.S.C. § 10(a))); *see E. Coast Advanced Plastic Surgery, LLC v. Cigna Health & Life Ins. Co.*, No. 25-CV-1686, 2025 WL 2371537, at *17 (S.D.N.Y. Aug. 14, 2025 ("[T]he NSA provides that an IDR [A]ward is

9

automatically 'binding upon the parties involved' and thus '*shall not be subject to judicial review*,' except in a case described in any of paragraphs (1) through (4) of section 10(a) of the [FAA]" (quoting 29 U.S.C. § 1185e(b)(5)(E))), *cert. denied sub nom.*, *Conn. Gen. Life Ins. Co. v. E. Coast Advanced Plastic Surgery*, LLC, No. 25-CV-1686, 2025 WL 3154472 (S.D.N.Y. Nov. 12, 2025), *appeal docketed*, No. 22-2204 (2d Cir. Sep. 15, 2025).  The insurer "must pay any additional compensation ordered by the [certified IDR entity] to the provider within 30 days of the decision." *Neurological Surgery Prac.*, 2145 F.4th at 219 (citing *Neurological Surgery*, 682 F. Supp. 3d at 255).

### ii.   Agency implementation and oversight

"[T]he United States Department of Health and Human Services, Department of the Treasury, Department of Labor, and the Secretaries of those agencies ("the Government Departments") . . . are charged with implementing and administering [the NSA]." *Id.* at *1.  The NSA directs the Government Departments to "establish by regulation" one IDR process and to "establish a process to certify (including to recertify) [IDR] entities." *Id.* at *2 (quoting 42 U.S.C. § 300gg-111(c)(4)(A)).  The Government Departments promulgated regulations that include a process for the Departments of Labor and Health and Human Services to "receive and resolve complaints" from "any individual, or their authorized representative" that an insurer "may be failing to meet" the NSA requirements.  29 C.F.R. § 2590.716-7 (mandating development of a complaint process for the [NSA] violations by insurers).  The NSA similarly allows for state and agency enforcement of provider's adherence to cost sharing and balance billing provisions.  *See* 42 U.S.C. § 300gg-111(a)(2)(B) (directing development of a process for participants and beneficiaries under a group health plan or group health insurance to submit complaints of violations of NSA's balance billing prohibitions and for the Secretary of Labor to coordinate investigation and enforcement).  In addition, the NSA directs the Departments to

develop rulemaking to audit insurers' compliance with requirements related to the Qualifying Payment Amount and annually issue to Congress "a report on the number of plans and issuers." 42 U.S.C § 300gg-111(a)(2)(A).

### b. Plaintiff's IDR process

Plaintiff requested $37,760 for CPT code 36226-LT, (Def.'s Mem. 9; *see* Explanation of Payment), and Defendant denied the claim explaining that it "exceeded, [was] noncovered, invalid, bundled, excluded, or unnecessary based on current/history claims for same provider/DOS." (Def.'s Mem. 9 n.17; *see* Explanation of Payment.)  After Defendant failed to pay the medical bill for 36226-LT, Plaintiff initiated the negotiation period as required by NSA. (Compl. ¶ 13.)  When Defendant failed to make payment, Plaintiff initiated the IDR process.[9] (*Id.* ¶ 14.)  "Plaintiff submitted a final offer of $32,000 while Defendant submitted [ ] a final offer of $2,127.87." (*Id.* ¶ 15.)  On January 29, 2024, a certified IDR entity ruled in Plaintiff's favor and awarded Plaintiff $32,000. (*Id.* ¶ 16.)  Defendant failed to make the payment within the thirty-day deadline, and to date, has not made a payment. (*Id.* ¶ 18.)  Plaintiff requests that the Court confirm the IDR Award and order Defendant to pay Plaintiff $32,000. (Compl. 6.)

Defendant argues that the Court lacks jurisdiction because Plaintiff's request arises from a medical claim that Defendant denied since the claim was not covered by Defendant's plan, (Def.'s Mem. 1–2, 9 n.17), and the NSA does not provide Plaintiff with standing to sue for a denied claim, (*id.* at 11–14.)  Defendant argues that the NSA does not incorporate Section 9 of the FAA which provides for confirming arbitration awards.  Defendant also requests that the Court vacate the IDR Award, (*see generally* Def.'s Cross-Mot. Reply), and Plaintiff argues that

---

[9]  The Court notes that Plaintiff attached as Exhibit A the IDR determination for the IDR dispute which applies to 36226-RT.  (Claim Form; Chun Aff. ¶ 10.)  Plaintiff has otherwise made clear that it is seeking relief for the determination made in the IDR regarding code 36226-LT.

the Court should confirm the IDR Award and further argues that the request to vacate the IDR Award is untimely.  (Pl.'s Reply 9–11.)

## II.  Discussion

### a.  Standards of review

#### i.  12(b)(1)

A district court may dismiss an action for lack of subject–matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the court "lacks the statutory or constitutional power to adjudicate it."  *AMTAX Holdings 227, LLC v. CohnReznick LLP*, 136 F.4th 32, 37 (2d Cir. 2025) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *Citizens United to Protect Our Neighborhoods v. Vill. of Chestnut Ridge, N.Y.*, 98 F.4th 386, 391 (2d Cir. 2024) (quoting *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 172 (2d Cir. 2021)); *Brokamp v. James*, 66 F.4th 374, 386 (2d Cir. 2023) (quoting *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.à.r.l.*, 790 F.3d 411, 416–17 (2d Cir. 2015)), *cert. denied*, 144 S. Ct. 1095 (2024); *Green v. Dep't of Educ. of City of New York*, 16 F.4th 1070, 1075 (2d Cir. 2021) (quoting *Makarova*, 201 F.3d at 113).  Courts must "accept the complaint's material allegations as true, and . . . draw all reasonable inferences in the plaintiffs' favor," *Sunvestment Energy Grp. NY 64 LLC v. Nat'l Grid USA Servs. Co.*, 116 F.4th 106, 113 (2d Cir. 2024) (quoting *Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 725 (2d Cir. 2017)), but "[w]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings," *Talarico Bros. Bldg. Corp. v. Union Carbide Corp.*, 73 F.4th 126, 136 (2d Cir. 2023) (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)); *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 441 (2d Cir. 2022) ("It is only where 'jurisdictional facts are placed in dispute' that the court has the 'obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.'" (first quoting

12

*Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014); and

then citing *LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999))); *see Iacovo v. Magguilli*,

No. 24-CV-4372, 2025 WL 1135471, at *3 (E.D.N.Y. Apr. 17, 2025) ("In resolving a motion to

dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint

. . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction."

(quoting *Tandon*, 752 F.3d at 243)).  Ultimately, "the party asserting subject matter jurisdiction

'has the burden of proving by a preponderance of the evidence that it exists.'"  *Tandon*, 752 F.3d

at 243 (quoting *Makarova*, 201 F.3d at 113); *AMTAX Holdings*, 136 F.4th at 37 ("A plaintiff

asserting subject matter jurisdiction has the burden of proving by a preponderance of the

evidence that it exists." (quoting *Makarova*, 201 F.3d at 113)).

### ii.    Article III standing

"The Constitution limits federal courts to deciding 'Cases' and 'Controversies.'"  *Bost v.

Illinois State Bd. of Elections*, 607 U.S. ---, ---, 146 S. Ct. 513, 523 (2026) (Barrett, J.,

concurring) (quoting U.S. Const. art. III, § 2); *FEC v. Ted Cruz for Senate*, 596 U.S. 289, 295

(2022) (quoting same).  "'Standing to sue is a doctrine' that 'limits the category of litigants

empowered to maintain a lawsuit in federal court to seek redress for a legal wrong.'"  *Liberian

Cmty. Ass'n of Conn. v. Lamont*, 970 F.3d 174, 183–84 (2d Cir. 2020) (quoting *Spokeo, Inc. v.

Robins*, 578 U.S. 330, 338 (2016)); *see also Packer ex rel. 1-800-Flowers.Com, Inc. v. Raging

Cap. Mgmt., LLC*, 105 F.4th 46, 51 (2d Cir. 2024) ("Article III of the Constitution requires that

plaintiffs establish standing to sue in federal court.").  "To establish constitutional standing, 'a

plaintiff must show (i) that he or she suffered an injury in fact that is concrete, particularized, and

actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury

would likely be redressed by judicial relief.'"  *DirecTV, LLC v. Nexstar Media Grp., Inc.*, 162

F.4th 295, 306 (2d Cir. 2025) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021);

*Packer*, 105 F.4th at 51 (quoting *TransUnion LLC*, 594 U.S. at 423) (same); *Saba Cap. Cef Opportunities 1, Ltd. Nuveen Floating Rate Income Fund*, 88 F.4th 103, 110 (2d Cir. 2023) (quoting *Thole*, 590 U.S. at 540) (same); *Liu v. Democratic Nat'l Comm.*, No. 21-3021, 2022 WL 4372587, at *1 (2d Cir. Sep. 22, 2022) (quoting *TransUnion LLC*, 594 U.S. at 423) (same); *Calcano v. Swarovski N.A. Ltd*., 36 F.4th 68, 74 (2d Cir. 2022) (quoting *TransUnion LLC, 594 U.S*. at 423) (same); *Maddox v. Bank of N.Y. Mellon Trust Co., N.A*., 19 F.4th 58, 62 (2d Cir. 2021) (quoting *Strubel v. Comenity Bank*, 842 F.3d 181, 187 (2d Cir. 2016)) (same).  "An injury in fact must be 'particularized,' and it must be 'concrete.'"  *Harty*, 28 F.4th at 442 (quoting Spokeo, Inc., 578 U.S. at 340).

"[S]tanding is required for subject matter jurisdiction."  *James v. Willis*, No. 21-501, 2022 WL 481812, at *1 (2d Cir. Feb. 17, 2022) (summary order) (citing *Strubel*, 842 F.3d at 187).  "If plaintiffs lack Article III standing, a court has no subject[-]matter jurisdiction to hear their claim."  *Karkare on behalf of JN v. Int'l Assoc. of Bridge, Structural, Ornamental & Reinforcing Iron Workers Local 580*, 140 F.4th 60, 64 (2d Cir. 2025) (alteration in original) (quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C*., 433 F.3d 181, 198 (2d Cir. 2005)); *Bohnak v. Marsh & McLennan Cos*., 79 F.4th 276, 282–83 (2d Cir. 2023) (quoting same); *see also Citizens United to Protect Our Neighborhoods*, 98 F.4th at 391 ("A district court properly dismisses an action for lack of subject-matter jurisdiction under Rule 12(b)(1) 'if the court lacks the statutory or constitutional power to adjudicate it, such as when the plaintiff[s] lack[] constitutional standing to bring the action.'" (alterations in original) (quoting *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 172 (2d Cir. 2021))).  "Before deciding any case on the merits, a district court must determine that it has subject matter jurisdiction over the matter.  Therefore, for a case to proceed, the party invoking federal jurisdiction must plausibly plead that it has standing to sue."  *Humphrey v. Syracuse*

14

*Police Dep't*, 758 F. App'x 205, 205–06 (2d. Cir. 2019) (first citing *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014); and then citing *Carter v. HealthPort Techs*., LLC, 822 F.3d 47, 55 (2d Cir. 2016)); see *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (Assessing plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."); *Calcano*, 36 F.4th at 74 ("Although we generally accept the truth of a plaintiff's allegations at the motion to dismiss stage, the plaintiff still 'bears the burden of alleging facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue." (alternation in original) (quoting *Cortlandt St. Recovery Corp*., 790 F.3d at 417)); *Pan v. Whitaker*, 351 F. Supp. 3d 246, 249–50 (E.D.N.Y. 2019) ("[F]ederal courts have a continuing and independent duty to ensure that they possess subject matter jurisdiction, and must dismiss a case when they find subject matter jurisdiction lacking."). The court "need not credit 'a legal conclusion couched as a factual allegation' or a 'naked assertion devoid of further factual enhancement,'" but must instead "refer to a complaint's 'factual context' to discern whether to accept 'a complaint's conclusory statements.'" *Calcano*, 36 F.4th at 75 (first quoting *Ashcroft*, 556 U.S. at 678; and then quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 146 (2d Cir. 2011)).

### iii.   Motion to confirm arbitration award

When a motion to confirm an arbitration award is accompanied by a record, "the petition and accompanying record should [be] treated as akin to a motion for summary judgment based on the movant's submissions." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2005). "The role of a district court in reviewing an arbitration award is narrowly limited and arbitration panel determinations are generally accorded great deference under the Federal Arbitration Act." *Kellner v. Amazon*, No. 22-CV-734, 2023 WL 2230288, at *1 (2d Cir. Feb. 27, 2023) (quoting *Kolel Beth Yechiel Mechill of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 103 (2d Cir.

15

2013)); *see also Andes Petro. Ecuador Ltd. v. Occidental Expl. and Prod. Co.*, No. 21-CV-3039, 2023 WL 4004686, at *2 (2d Cir. June 15, 2023) (quoting *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 138 (2d Cir. 2007)).

"[C]onfirmation of an arbitration award is 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court,' and the court 'must grant' the award 'unless the award is vacated, modified, or corrected.'" *D.H. Blair & Co.*, 462 F.3d at 110 (first quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984); and then quoting 9 U.S.C. § 9); *see also Trs. of Mason Tenders Dist. Council Welfare Fund, Pension Fund, Annuity Fund, & Training Program Fund v. A.J.S. Project Mgmt., Inc.*, No. 19-CV-711, 2020 WL 6546212, at *2 (S.D.N.Y. Nov. 6, 2020) (quoting *D.H. Blair & Co.*, 462 F.3d at 109). "The arbitrator's rationale for an award need not be explained, . . . [o]nly 'a barely colorable justification for the outcome reached' by the arbitrators is necessary to confirm the award." *D.H. Blair & Co.*, 462 F.3d at 110 (first quoting *Barbier v. Shearson Lehman Hutton, Inc.*, 948 F.2d 117, 121 (2d Cir. 1991); then quoting *Landy Michaels Realty Corp. v. Loc. 32B–32J, Serv. Emps. Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992)). Accordingly, "courts 'play only a limited role when asked to review the decision of an arbitrator.'" *Tully Constr. Co. v. Canam Steel Corp.*, 684 F. App'x 24, 26 (2d Cir. 2017) (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987)). "The award should be confirmed 'if a ground for the arbitrator's decision can be inferred from the facts of the case.'" *Smarter Tools Inc. v. Chongqing SENCI Imp. & Exp. Trade Co.*, 57 F.4th 372, 379 (2d Cir. 2023) (quoting *D.H. Blair & Co.*, 462 F.3d at 110).

### iv.   Subject-matter jurisdiction under the FAA

The FAA does not provide a standalone basis for subject-matter jurisdiction, instead, there must be an "independent jurisdictional basis to resolve the matter." *Badgerow v. Walters*,

596 U.S. 1, 4, (2022); *see Tanjutco v. N.Y. Life Sec. LLC*, No. 24-2666, 2025 WL 3526470, at *2 (2d Cir. Dec. 9, 2025) ("[T]he FAA's 'authorization of a petition does not itself create jurisdiction, and a federal court must have "an independent jurisdictional basis to resolve the matter" (quoting *Badgerow*, 596 U.S. at 4)); *Malkin v. Shasha as co-Tr. of Violet Shuker Shasha Tr.*, No. 21-2675, 2023 WL 3012381, at *1 (2d Cir. Apr. 20, 2023) ("Because the FAA does not itself establish federal jurisdiction, a federal court may review such petitions only if it has 'an independent jurisdictional basis to resolve the matter'" (quoting *Badgerow*, 596 U.S. at 4)). Where a party seeks to confirm an arbitration award pursuant to Section 9 of the FAA, the petition must invoke diversity or subject matter jurisdiction. *Badgerow*, 596 U.S. at 9; *see Green v. Bank of Am. Merrill Lynch*, No. 24-CV-2550, 2025 WL 1378193, at *2 (2d Cir. May 13, 2025) ("Where, as here, a Section 9 or 10 petition raise[s] claims between non-diverse parties . . . the petition [does] not [belong in] federal court" (internal citations omitted)); *Trs. of N.Y. State Nurses Ass'n Pension Plan v. White Oak Glob. Advisors, LLC*, 102 F.4th 572, 594 (2d Cir. 2024) ("Absent diversity of citizenship between the parties, jurisdiction over a petition exists only if the 'face of the application' shows that 'federal law (beyond Section 9 or 10 itself) entitles the applicant to relief'" (quoting *Badgerow*, 596 U.S. at 9)).[10]

---

[10] On March 30, 2026, the Supreme Court heard oral argument in *Jules* v. *Andre Balazs Properties*, No. 25-83. The Supreme Court is considering whether a district court that had jurisdiction over a claim when the lawsuit was initially filed, stayed the case and sent it to arbitration, can later confirm or vacate an arbitration award even if there is no other basis for federal court jurisdiction at the later stage. In the underlying decision, *Jules v. Andre Balazs Props.*, No. 23-1253, 2025 WL 1201914, at *2 (2d Cir. Apr. 25, 2025), *cert. granted*, 146 S. Ct. 878, 223 (2025), the Second Circuit concluded that "the district court retained jurisdiction following its stay pending arbitration to confirm the resulting award." *Id.* The Second Circuit relied on a line of cases that provide that a "'court with the power to stay the action under § 3 [of the FAA] has the further power to confirm any ensuing arbitration award.'" *Id.* (quoting *Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 193, 202). Unlike in *Jules*, the Court does not have jurisdiction over Plaintiff's claim.

17

**b.    Plaintiff lacks standing to enforce the IDR Award**

Defendant argues that the Court should dismiss this case for lack of standing since "Plaintiff lacks Article III standing because there is no financial injury, nor any injury to any other legally protected interest, as the NSA does not apply to the underlying medical claim line at issue."  (Def.'s Mem. 11.)  First, Defendant argues that "[u]nless and until Plaintiff establishes a threshold right to be reimbursed by [Defendant], there cannot be a cognizable injury arising from the [Defendant]'s non-payment of the IDR determination as to the purported value of the claim line."  (Def.'s Reply 8.)  Second, Defendant argues that "the NSA explicitly limits the scope of items and services eligible for IDR, and in doing so excludes items and services that are the subject of an adverse benefit determination," and "[n]othing in the NSA vests [c]ertified IDR entities with authority to override a health plan's coverage determination and compel payment where that plan has determined that none is owed."  (*Id.*)  Third, Defendant argues that the Court should dismiss this case because "the NSA does not . . . incorporate the FAA as a mechanism for enforcing its IDR determination."  (Def.'s Mem. 15.)

Plaintiff argues that "Defendant's standing arguments . . . are without merit," and "go[] to the heart of a motion to vacate, not a motion to dismiss for lack of standing."  (Pl.'s Opp'n 6–7.)  First, Plaintiff argues that because Defendant has refused to pay the $32,000 issued by the certified IDR entity and Plaintiff has "alleged sufficient facts to demonstrate that Defendant has withheld money to which Plaintiff is entitled, Plaintiff has established an injury-in-fact sufficient for Article III standing."  (Pl.'s Opp'n 7–8.)  Second, Plaintiff argues that the certified IDR entity was tasked with determining whether 36226-LT was eligible for an IDR, Defendant did not object to the IDR process, fully participated in the process and therefore, "Plaintiff has a legally binding arbitration award in its favor."  (*Id.* at 8.)  Finally, Plaintiff argues that the award issued by the certified IDR entity is enforceable under Section 9 of the FAA because the NSA provides

18

an implied right to enforce IDR Awards.  (*Id.* at 9.)

When interpreting a statute, courts first turn to the plain meaning of the statute and presume that a legislature says what it means in the statute.  *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992); *see New York v. Mountain Tobacco Co.*, 942 F.3d 536, 546 (2d Cir. 2019) ("The plain meaning [of a statute] is best discerned by 'looking to the statutory scheme as a whole and placing the particular provision within the context of that statute.'" (quoting *Saks v. Franklin Covey Co.*, 316 F.3d 337, 345 (2d Cir. 2003))); *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 155 (2d Cir. 2013) (stating that statutory analysis begins with a "review [of] the statutory text, considering . . . the placement and purpose of [the] words in the statutory scheme" (quoting *United States v. Aguilar*, 585 F.3d 652, 657 (2d Cir. 2009))), *cert. dismissed*, 569 U.S. 1040 (2013); *Estate of Pew v. Cardarelli*, 527 F.3d 25, 30 (2d Cir. 2008) ("We first look to the statute's plain meaning; if the language is unambiguous, we will not look farther."); *Green v. City of N.Y.*, 465 F.3d 65, 78 (2d Cir. 2006) ("Statutory analysis begins with the text and its plain meaning, if it has one.  Only if an attempt to discern the plain meaning fails because the statute is ambiguous, do we resort to canons of construction.  If both the plain language and the canons of construction fail to resolve the ambiguity, we turn to the legislative history." (internal citations omitted)); *Lee v. Bankers Trust Co.*, 166 F.3d 540, 544 (2d Cir. 1999) ("It is axiomatic that the plain meaning of a statute controls its interpretation, and that judicial review must end at the statute's unambiguous terms.  Legislative history and other tools of interpretation may be relied upon only if the terms of the statute are ambiguous." (internal citations omitted)).  "[O]nly those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court."  *TransUnion LLC*, 594 U.S. at 427 (emphasis omitted); *Cao v. Wedding in Paris LLC*, 727 F. Supp. 3d 239, 295 (E.D.N.Y. 2024) (quoting *Id.*).

The NSA's opening provision on balance billing for non-emergency services performed by out-of-network providers states that its provisions apply to "items or services . . . for which benefits are provided under the plan." *See* 42 U.S.C. § 300gg-132; *see also* Requirements Related to Surprise Billing; Part I, 86 Fed. Reg. 36,872, 36,891 (July 13, 2021) (explaining that NSA protections are not universal and do not extend to non-covered items or services); U.S. Dep't of Labor, Emp. Benefits Sec. Admin., *How the No Surprises Act Can Protect You* (2022), https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/resource-center/publications/avoid-surprise-healthcare-expenses (last visited Mar. 31, 2026) ("The [NSA] does not cover every unexpected or high medical bill. For example, you can still be billed for services and treatments that are *not covered* by your plan.").

### i.    Plaintiff has no standing under the NSA to challenge the denied claim

Plaintiff has not alleged that it suffered an injury sufficient to establish standing under the NSA because the injury Plaintiff alleges arises from a denied claim.  Defendant denied CPT code 36226-LT explaining that the claim "exceeded, [was] noncovered, invalid, bundled, excluded, or unnecessary based on current/history claims for same provider/DOS."  (Def.'s Mem. 9 n.17; *see* Explanation of Payment.)

In support of its argument that it has standing under the NSA to confirm the IDR Award, Plaintiff relies on guidance from the Centers for Medicare and Medicaid Services to argue that the certified IDR entity was tasked with "determin[ing] whether the [f]ederal IDR [p]rocess is applicable." (Pl.'s Opp'n 8 (first alteration in original) (quoting Federal IDR Process Guidance for Certified IDR Entities).)  However, the NSA provides that it applies to "items or services . . . for which benefits are provided under the plan." *See* 42 U.S.C. § 300gg-132.  Further, Federal IDR Process Guidance for Certified IDR Entities, the guidance that Plaintiff relies on, provides that a "notice of denial of payment is not the same as a denial of coverage as the result of an

adverse benefit determination" [as defined in 29 CFR 2560.503-1].[11]  (Federal IDR Process

Guidance for Certified IDR Entities 4 n.3); and that "[an] adverse benefit determination, if

disputed, must be disputed through a plan's or issuer's claims and appeals process, not through

the Federal IDR process."  *Id.*; *see also* Requirements Related to Surprise Billing; Part I, 86 Fed.

Reg. 36,872, 36,901–02 (July 13, 2021) (stating that a coverage denial constituting an adverse

benefit determination under the NSA "be disputed through the plan[] or issuer's claims and

appeals process"); Federal Independent Dispute Resolution Guidance for Disputing Parties 4 n.2

("[A] denial of coverage as the result of an adverse benefit determination must be disputed

through a plan[] or issuer's claims and appeals process, not through the Federal IDR Process")

(citing 86 Fed. Reg. at 36,901–02)).

Because the NSA applies to "items or services . . . for which benefits are provided under

the plan," *see* 42 U.S.C. § 300gg-132, it does not apply to claims that are denied because they are

not covered under the plan.  Where a plaintiff is challenging the denial of a claim, federal

guidance clarifies that the plaintiff is to "dispute[] the denial through [Defendant's] claims and

appeals process not the IDR process.  *See* Requirements Related to Surprise Billing; Part I, 86

Fed. Reg. 36,872, 36,901–02 (July 13, 2021) (stating that a coverage denial constituting an

adverse benefit determination under the NSA "be disputed through the plan[] or issuer's claims

and appeals process.")

---

[11]  *See* 29 C.F.R. § 2560.503-1(m)(4) (defining adverse benefit determination as "any of the following: a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit, including any such denial, reduction, termination, or failure to provide or make payment that is based on a determination of a participant's or beneficiary's eligibility to participate in a plan, and including, with respect to group health plans, a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit resulting from the application of any utilization review, as well as a failure to cover an item or service for which benefits are otherwise provided because it is determined to be experimental or investigational or not medically necessary or appropriate.")

Plaintiff seeks to challenge the denied claim under CPT code 36226-LT and must do so through the Defendant's internal system. *See* Requirements Related to Surprise Billing; Part I, 86 Fed. Reg. 36,872, 36,901–02 (July 13, 2021) (stating that a coverage denial constituting an adverse benefit determination under the NSA "be disputed through the plan[] or issuer's claims and appeals process.") Under the NSA, Plaintiff lacks standing to challenge a denied medical claim; therefore, the Court lacks subject matter jurisdiction to confirm the IDR Award pursuant to the NSA as requested by Plaintiff. *See Harty v. W. Point Realty, Inc.*, 28 F.4th 435 (2d Cir. 2022) (affirming dismissal for lack of standing where plaintiff alleged statutory violations but failed to plead any concrete injury); *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58 (2d Cir. 2021) (affirming dismissal for lack of standing where plaintiffs alleged statutory violations but did not allege monetary loss or adverse financial consequences).

The Court therefore denies Plaintiff's request to confirm the award under the NSA because Plaintiff lacks standing and the Court therefore has no jurisdiction to adjudicate Plaintiff's request.

### ii.    Plaintiff lacks standing under the FAA to enforce the IDR Award

Defendant argues that the Court should also dismiss Plaintiff's motion for lack of jurisdiction because Plaintiff seeks relief pursuant to Section 9 of the FAA but the "NSA does *not* incorporate the FAA's procedures for enforcing an IDR determination." (Def.'s Mem. 14–15.)

Plaintiff argues that the IDR Award issued by the certified IDR entity is enforceable under Section 9 of the FAA because the NSA provides an implied right to enforce IDR

22

Awards.[12]  (Pl.'s Opp'n 9.)

### 1. The FAA does not independently confer jurisdiction

The FAA "does not itself create jurisdiction." *See Badgerow v. Walters*, 596 U.S. 1, 4 (2022) (holding that the FAA does not independently confer jurisdiction and there must be an "independent jurisdictional basis to resolve the matter" in cases involving Sections 9 and 10 of the FAA); *Malkin*, 2023 WL 3012381 ("Because the FAA does not itself establish federal jurisdiction, a federal court may review such petitions only if it has 'an independent jurisdictional basis to resolve the matter'" (quoting *Badgerow*, 596 U.S. at 4)).  Where a party seeks to confirm an arbitration award pursuant to Section 9 of the FAA, a court "may look only

---

[12]  Plaintiff argues that the court in *GPS of N.J. M.D., P.C. v. Horizon Blue Cross & Blue Shield*, 22-CV-6614, 2023 WL 5815821, at *1 (D.N.J. Sep. 8, 2023) held that "federal courts have jurisdiction to confirm NSA awards pursuant to the FAA" and the Court should confirm the IDR award.  (Pl.'s Opp'n. 9–11.)  In *GPS*, the court denied the plaintiff's motion to vacate an IDR Award and granted the defendant's cross-motion to confirm the IDR award.  The *GPS* court concluded that "[plaintiff] ha[d] not met its burden of proving that the arbitration award at issue should be vacated.  Accordingly, [the court] "confirm[ed] the arbitration award."  *GPS*, 2023 WL 5815821at *10.  The parties in *GPS* did not request that the court consider whether the NSA incorporated Section 9 of the FAA and the *GPS* court's analysis focused on sections 10(a)(3) and (4) of the FAA, both of which Congress expressly incorporated into the NSA.  As a district court in New Jersey recently explained, "the Petitioner in [*GPS*] was not petitioning the [c]ourt to confirm the IDR [A]ward — it was petitioning the court to vacate the award granted to the Respondent."  *Mod. Orthopaedics of N.J. v. Premera Blue Cross*, No. 2:25-CV-01087, 2025 WL 3063648, at *13 (D.N.J. Nov. 3, 2025).  In this case, the *GPS* court's reasoning does not apply, as the parties disagree as to whether the NSA incorporates section 9 of the FAA unlike in *GPS* where the parties did not contest whether the NSA incorporated sections 10(a)(3) and (4) of the FAA.  In addition, recent district court cases have concluded that courts lack jurisdiction to confirm IDR Awards because the NSA does not incorporate Section 9 of the FAA.  *See Spiel, Md, Pa, v. Horizon Blue Cross Blue Shield Of N.J.*, No. 25-CV-14769, 2025 WL 3459719, at *4 (D.N.J. Dec. 2, 2025) (finding that the court lacks jurisdiction to confirm an IDR Award "because the IDR process is not an arbitration" and dismissing Plaintiff's claims under Section 9 of the FAA); *Complete Medical Wellness LLC, v. Horizon Blue Cross Blue Shield Of N.J.*, No. CV 25-04177, 2025 WL 3443620, at *4 (D.N.J. Dec. 1, 2025) (same); *Garden State Pain Management, v. Horizon Blue Cross Blue Shield Of N.J.*, No. 25-CV-05679, 2025 WL 3443243, at *4 (D.N.J. Dec. 1, 2025) (same); *Northeast Neurosurgical Assocs., v. Horizon Blue Cross Blue Shield Of N.J.*, No. 25-CV-06288, 2025 WL3282210, at *4 (D.N.J. Nov. 25, 2025) (same); *Freeman Pain Inst. P.A. v. Horizon Blue Cross Blue Shield of N.J.*, No. 25-CV-02507, 2025 WL 3268289, at *4 (D.N.J. Nov. 24, 2025) (same).

to the application actually submitted to it in assessing its jurisdiction." *Badgerow*, 596 U.S. at 5; *see Green*, 2025 WL 1378193, at *2 (affirming the district court's holding that the plaintiff failed to allege "that federal law (beyond Section 9 or 10 itself) entitle[d] [the plaintiff] to relief" and holding that "[w]here, as here, a Section 9 or 10 petition raise[s] claims between non-diverse parties involving state law, the petition belongs in state, not federal court" (internal citations omitted)); *see also Trs. of the N.Y. State Nurses Asso'n Pension Plan*, 102 F.4th at 596 ("Subject matter jurisdiction over a petition to confirm an award turns on the law governing the contractual rights created by the arbitration agreement.").

The Court lacks jurisdiction pursuant to Section 9 of the FAA to confirm the IDR Award because the FAA does not independently confer jurisdiction. *See Molecular Dynamics, Ltd. v. Spectrum Dynamics Med. Ltd.*, 143 F.4th 70, 86 (2d Cir. 2025) (finding that the FAA "'bestows no federal jurisdiction but rather requires for access to a federal forum an independent jurisdictional basis over the parties' dispute'" (quoting *Landau v. Eisenberg*, 922 F.3d 495, 497 (2d Cir. 2019))); *Broumand v. Joseph*, 522 F. Supp. 3d 8, 19 (S.D.N.Y. 2021) (The FAA "bestows no federal jurisdiction but rather requires for access to a federal forum an independent jurisdictional basis over the parties' dispute" (quoting *Washington Nat'l Ins. Co. v. OBEX Grp. LLC*, 958 F.3d 126, 133 (2d Cir. 2020))).

Accordingly, the Court has no jurisdiction pursuant to Section 9 of the FAA to confirm the IDR Award.

### 2. Congress did not incorporate Section 9 of the FAA into the NSA

Section 9 of the FAA empowers courts to confirm an arbitration award. *See T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 338 n.6 (2d Cir. 2010) (noting that Section 9 "articulat[es] the district court's power to confirm arbitration awards"); *Elwell v. Raymond James*

*Fin. Servs., Inc.*, 686 F. Supp. 3d 281, 287 (S.D.N.Y. 2023) ("Section[] 9 . . . of FAA empower[s] a federal court to confirm . . . an arbitration award.")  A court is only required to find "a barely colorable justification for the outcome reached" by the arbitrators to confirm an award.  *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 122 (2d Cir. 2011) (quoting *ReliaStar Life Ins. Co. of N.Y. v. EMC Nat'l Life Co.*, 564 F.3d 81, 86 (2d Cir. 2009)); *see also D.H. Blair & Co.*, 462 F.3d at 110.  "The arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case."  *D.H. Blair & Co.*, 462 F.3d at 110 (internal quotation marks omitted).

As discussed above, Section 9 of the FAA provides for confirming an IDR Award but does not independently confer jurisdiction on the Court.  *See Supra* II.b.  Thus, a party seeking confirmation of an IDR Award must separately allege jurisdiction.  (*Id.*)  Moreover, Congress did not incorporate Section 9 of the FAA into the NSA and the Court therefore cannot confirm the IDR Award pursuant to NSA.  *See T.V. Seshan M.D., P.C. v. Blue Cross Blue Shield Ass'n*, No. 25-CV-499, 2025 WL 3496382, at *6 (S.D.N.Y. Dec. 5, 2025) (noting that Congress did not incorporate Section 9 of the FAA into the NSA); *Jeffrey Farkas, M.D., LLC v. Horizon Blue Cross Blue Shield of N.J.*, 790 F. Supp. 3d 129, 138 (E.D.N.Y. 2025) ("Congress chose not to incorporate [Section] 9 into the NSA.  It incorporated only parts of [Section] 10." (quoting *Guardian Flight, L.L.C*, 140 F.4th 271, 276 (5th Cir. 2025))); *Mod. Orthopaedics of N.J. v. Premera Blue Cross*, No. 2:25-CV-01087, 2025 WL 3063648, at *7 (D.N.J. Nov. 3, 2025) ("[D]espite being a federal law, Section 9 bestows no federal jurisdiction and instead the plaintiff requires an independent jurisdictional basis on the face of the complaint." (internal quotations and citation omitted)).

The NSA does not incorporate Section 9 of the FAA, so the Court cannot confirm the

IDR Award pursuant to NSA and because the FAA does not confer jurisdiction, the Court also cannot affirm the IDR Award pursuant to Section 9 of the FAA.

### 3.    The NSA does not include an implied private right of action that incorporates Section 9 of the FAA

Defendant argues first, that "[t]here is no evidence of Congressional intent to create a private right of enforcement" regarding the NSA.  (Def.'s Reply 15.)  Second, Defendant argues that "the Supreme Court has expressly stated that courts cannot do what Plaintiff asks of this [C]ourt — find an implied remedy because of vague concerns that the remedies that Congress *did* provide for are somehow insufficient." (*Id.*)  Third, Defendant argues that "Congress specifically addressed judicial review of IDR determinations, and in doing so excluded private enforcement." (*Id.*at 17.)  Finally, Defendant argues that analyzing the *Cort v. Ash*, 422 U.S. 66 (1975), factors lead to the conclusion that Congress did not intend to provide a private right of action.  Defendant argues that the first *Cort* factor — whether the plaintiff is a member of the class for whose special benefit the statute was created — weighs in its favor because "the statute *expressly limits the availability of judicial review to only those circumstances where vacating an arbitration award might be appropriate.*" (Def.'s Mem. 22.)  Defendant argues that "this alone is sufficient to foreclose any argument that a private cause of action can be found by implication," (*id.*), and there is no indication in the NSA that Congress intended providers to benefit from it, (*id.* at 22–23.)  As to the second factor — whether there is an indication of an implicit or explicit legislative intent to create or deny a private remedy —  Defendant argues it weighs in its favor because "Congress clearly considered the appropriate enforcement mechanism, as the NSA *explicitly directs* the [Department of Labor] (which regulates ERISA plans such as [Defendant's]) to "identify patterns of [ ] violations" under the law, conduct investigations, and take retrospective and prospective measures to correct violations, as well as

26

to develop a process to receive complaints relating to alleged violations.[13]  (*Id.* (citing 29 U.S.C. § 1152(a)).)

Plaintiff argues first, that the IDR Award "issued by the certified IDR entity is enforceable under Section 9 of the FAA" because "the NSA provides an implied right to enforce IDR Awards."  (Pl.'s Opp'n 9.)  Second, Plaintiff argues that "the factors set forth in *Cort v. Ash*[14] . . . lead to the conclusion that the NSA contains an implicit private right of action."  (*Id.* at 17.)  Third, Plaintiff argues that the "NSA benefits patients, providers, *and* insurers."  (*Id.*)  In support, Plaintiff contends that NSA benefits patients by protecting them from balance billing, providers by ensuring prompt and fair payment of awards and insurers "by having claims paid at a reasonable rate."  (*Id.* at 18.)  Fourth, Plaintiff contends that the NSA states that an IDR Award "shall be binding upon the parties involved" and this indicates congressional intent of a right and remedy because it "carries an implicit judicial enforcement mechanism."  (*Id.* at 9, 12.)

"[P]rivate rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001); *see also Cenzon-DeCarlo v. Mount Sinai Hosp.*, 626 F.3d 695, 697 (2d Cir. 2010) ("Federal courts have inferred private rights of action, but only when there is explicit evidence of Congressional intent."); *Duplan v. City of N.Y.*, 888 F.3d 612, 621 (2d Cir. 2018) (finding that the Supreme Court "has increasingly discouraged the recognition of implied rights of actions without a clear indication of congressional intent"); *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 116 (2d Cir. 2007) (finding that where there is no

---

[13]  Defendant did not address the last two *Cort* factors: whether "it is consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff" and whether "the cause of action is one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law." *Cort v. Ash*, 422 U.S. 66, 78 (1975).

[14]  Plaintiff does not analyze each *Cort* factor separately.  (*See generally* Pl.'s Opp'n; Pl.'s Reply)

express private right of action, courts "begin with the presumption that Congress did not intend one"); *see also Moya v. U.S. Dep't of Homeland Sec.*, 975 F.3d 120, 128 (2d Cir. 2020) ("[I]mplied rights of action are disfavored."); *Olmsted v. Pruco Life Ins. Co.*, 283 F.3d 429, 432 (2d Cir. 2002) ("A court . . . cannot ordinarily conclude that Congress intended to create a right of action when none was explicitly provided."); *Zito v. NYC Office of Payroll Admin*, No. 11-CV-2779, 2011 WL 5420054, at *3 (S.D.N.Y. Nov. 9, 2011) ("A private right of action will not be implied without 'explicit evidence of Congressional intent.'" (quoting *Cenzon-DeCarlo*, 626 F.3d at 697.)) "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Sandoval*, 532 U.S. at 286. The "statutory intent . . . [of the remedy] is determinative." *Id.; see also Republic of Iraq v. ABB AG*, 768 F.3d 145, 170 (2d Cir. 2014) (noting that courts look to the "texture and structure of the statute for congressional intent").

A court can only find an implied cause of action where "the underlying statute can be interpreted to disclose the intent to create one." *Stoneridge Inv. Partners, LLC v. Scientific–Atlanta*, 552 U.S. 148, 164 (2008). A court must ascertain whether the statute "'displays an intent to create not just a private right but also a private remedy.'" *Republic of Iraq*, 768 F.3d at 170 (quoting *Sandoval*, 532 U.S. at 286). In *Cort v. Ash*, the Supreme Court outlined a four-factor test to guide a court's analysis of congressional intent. *Cort v. Ash*, 422 U.S. 66 (1975). *Cort* asks the court to consider:

> First, is the plaintiff one of the class for whose especial benefit the statute was enacted — that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

28

*Id.* at 78 (citations omitted).

Based on the *Cort* factors, the Court finds that Congress did not intend to create an implied right of action for the NSA. The first factor — whether the plaintiff is a member of the class for whose special benefit the statute was created — weighs against Plaintiff because Plaintiff is not a member of a class for whose special benefit Congress created the NSA. *See California v. Sierra Club*, 451 U.S. 287, 294 (1981) (finding that this *Cort* factor "is not simply who would benefit from the Act, but whether Congress intended to confer federal rights upon those beneficiaries.) "[R]ecognition of any private right of action for violating a federal statute . . . 'must ultimately rest on congressional intent to provide a private remedy.'" *Astra USA, Inc. v. Santa Clara Cnty., Cal.*, 563 U.S. 110, 117 (2011) (quoting *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1102, (1991)). The existence of an implied cause of action turns on whether there is "a clear manifestation of congressional intent to create" an implied cause of action. *Lopez v. Jet Blue Airways*, 662 F.3d 593, 596 (2d Cir. 2011); *see Johnson v. JPMorgan Chase Bank, N.A.*, 488 F. Supp. 3d 144, 157 (S.D.N.Y. 2020) ("Such a 'clear manifestation' exists where the statute's text and structure show an intention to create a federal right through rights-creating language, an intention to create a private remedy, and consistency of a private remedy with the statutory scheme." (citing *Republic of Iraq*, 768 F.3d at 170)).

Plaintiff argues that the NSA includes rights-granting language that applies to providers like Plaintiff by "mandat[ing] prompt and fair payment of binding awards through the IDR process." (Pl.'s Opp'n 17–18.) To find an implied cause of action, the NSA would also have to include legislative intent for Plaintiff to redeem a remedy through the courts. However, there is no language in the NSA that provides a remedy for Plaintiff challenging a denied claim. *See Koppel v. 4987 Corp.*, 167 F.3d 125, 135 (2d Cir. 1999) ("Generally the determination of

29

whether an implied private right of action lies under a statute 'must ultimately rest on congressional intent to provide a private remedy'" (quoting *Virginia Bankshares, Inc*. 501 U.S. at 1102)); *New York City Health & Hosps. Corp. v. WellCare of N.Y., Inc*., 801 F. Supp. 2d 126, 134 (S.D.N.Y. 2011) ("'[R]ecognition of any private right of action for violating a federal statute' . . . 'must ultimately rest on congressional intent to provide a private remedy'" (quoting *Astra USA, Inc*, 563 U.S. at 117)); *see also Guardian Flight LLC*, 735 F. Supp. 3d at 749 (holding that Congress did not intend to include an implied private right of action and explaining that "[t]here is no language in the NSA establishing that Congress intended to create a remedy for out-of-network providers."). The NSA does not include congressional intent to provide a right and remedy to providers, therefore this factor weighs in Defendant's favor.

The second *Cort* factor — whether there is an indication of an implicit or explicit legislative intent to create or deny a private remedy — weighs against Plaintiff because Congress has provided an administrative scheme[15] as the appropriate remedy for providers like Plaintiff seeking to resolve their disputes with insurers. *See Mod. Orthopaedics*, 2025 WL 3063648, at *9 (finding that the "inclusion of administrative enforcement negates any implied right of action"); *see also supra* Section I.a.2 (outlining the NSA's administrative enforcement scheme). In light of this administrative scheme, the second *Cort* factor weighs against finding an implied cause of

---

[15] Plaintiff analogizes this case to *Cheminova A/S v. Griffin L.L.C.* (Pl.'s Opp'n 17.) In *Cheminova A/*S, the court found that the administrative remedy provided in the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") did not supplant or preclude judicial enforcement of the statute. *See* 182 F. Supp. 2d 68, 73–74 (D.D.C. 2002). The *Cheminova A/*S court found it necessary to imply a cause of action to further the goals of the statute. *Id.* However, this reasoning does not apply to this case because as established in this section, there is no legislative intent for an implied cause of action in the NSA. Unlike FIFRA, which does not include an administrative remedy such as agency enforcement or a dispute resolution process, the NSA provides administrative remedies to achieve its goals. Unlike the NSA, FIFRA expressly incorporated a set of preexisting arbitration procedures and provided for judicial confirmation. (*Id.* at 79.)

action.  Further, the plain text of the NSA reveals no legislative intent for a cause of action for providers like Plaintiff.  Rather, Congress has created an administrative scheme and in light of the extensive administrative scheme, this Court cannot invent a cause of action.  *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 328–29 (2015) ("'The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others'" (quoting *Sandoval*, 532 U.S. at 290)); *see also Lindsay*, 581 F.3d at 52 ("If Congress has manifested no intent to provide a private right of action, we cannot create one"); *Neurological Surgery, P.C. v. Oxford Health Plans (NY), Inc.*, No. 18-CV-560, 2020 WL 13931876, at *9 (E.D.N.Y. Oct. 30, 2020) ("Where a statute fails to specify a private cause of action, there is a presumption that Congress did not intend to create such a right"); *see also FHMC LLC v. Blue Cross & Blue Shield of Ariz. Inc.*, No. 23-CV-876, 2024 WL 1461989, at *3 (D. Ariz. Apr. 4, 2024) ("An implied right of action is incongruous with [the NSA], in which judicial review is limited to specific instances");  *Axis Neuromonitoring, LLC, Petitioner, v. Aetna Inc., Kelsey Seybold Medical Group, Pllc, Respondents.*, No. 25-CV-1048 , 2026 WL 795260, at *5 (D. Conn. Mar. 20, 2026) (holding that "the NSA [did not] create an implied private right of action"); *Conn. Gen. Life Ins. Co. v. E. Coast Advanced Plastic Surgery, LLC*, No. 25-CV-1686, 2026 WL 518442, at *7 (S.D.N.Y. Feb. 24, 2026) (affirming the court's previous finding in an earlier motion to dismiss in which the court "[join[ed] the substantial majority of courts to consider the issue" and found that "the NSA does not contain an express or implied right of action.").

The first two *Cort* factors fail to reveal any congressional intent to create a private right of action, and the Court therefore declines to consider the final two factors.  *See Alaji Salahuddin v. Alaji*, 232 F.3d 305, 309 (2d Cir. 2000) ("[W]hen analysis of the first two *Cort* factors fails to reveal any congressional intent to create a private right of action, the final two factors need not

be reached.").

In summary, Plaintiff lacks standing to confirm the IDR Award under the NSA because NSA does not expressly or impliedly incorporate Section 9 of the FAA; the FAA does not confer jurisdiction on the Court, therefore the Court lacks jurisdiction to confirm the IDR Award.

**c.   Defendant's motion to vacate the IDR award and Plaintiff's cross-motions to confirm the IDR Award**

Defendant argues, first, that the Court should vacate the IDR Award issued by the certified IDR entity because the certified IDR entity exceeded its statutory scope in granting the award by issuing a payment for a denied claim and the certified IDR entity has no authority to do so.  (Def.'s Reply 22–23; Def.'s Cross-Mot. Reply 5–6.)  Second, Defendant argues that the Court should also vacate the IDR Award because it was "procured by fraud or undue means" as "Plaintiff only procured its favorable IDR determination . . . by falsely attesting that the underlying denied claim line was eligible for IDR." [16]  (Def.'s Cross-Mot. Reply 7, 9; Def.'s Reply 24–25.)  Finally, Defendant argues that it timely moved to vacate the IDR Award because "Congress did not incorporate [the FAA's statute of limitations] into the NSA."  (Def.'s Cross-Mot. Reply 1.)

Plaintiff seeks confirmation of the IDR Award and argues, first, that "pursuant to Section 9 of the FAA, a party to an arbitration may commence a summary action in court for confirmation of the award, and 'the court *must* grant such an order unless the award is vacated, modified, or corrected as prescribed [by the FAA].'"  (Pl.'s Opp'n 19–20 (alteration in original)

---

[16]  Because the Court dismisses the complaint for lack of jurisdiction, the Court declines to address the merits of the motion to vacate — that Plaintiff received the IDR Award by fraud or undue means.  *See Molecular Dynamics, Ltd. v. Spectrum Dynamics Med. Ltd.*, 143 F.4th 70, 80–81 (2d Cir. 2025) (affirming a district court's dismissal of a petition to vacate a foreign arbitral award for lack of subject matter jurisdiction and not addressing any merits or substantive vacatur arguments because the jurisdictional defect precluded reaching those issues).

(quoting 9 U.S.C. § 9).)  Second, Plaintiff argues that Defendant's cross-motion to vacate the IDR Award "is [u]ntimely under the FAA['s] [statute of limitations]."  (Pl.'s Reply 9.)  Third, Plaintiff argues that Defendant does not meet its "[h]igh [b]urden to [v]acate the [a]ward."  (*Id.* at 11.)

The NSA "incorporates [Section 10] the FAA's provisions allowing for the vacatur of arbitration awards."  *Reach Air Med. Servs. LLC v. Kaiser Found. Health Plan Inc*., No. 24-10135, 2025 WL 3222820, at *4 (11th Cir. Nov. 19, 2025); *see Guardian Flight, L.L.C*, 140 F.4th 613, 618 (5th Cir. 2025) ("[T]he NSA incorporates Federal Arbitration Act ("FAA") provisions that allow courts to vacate awards only for specific reasons").  "Under the FAA, courts may vacate an arbitrator's decision 'only in very unusual circumstances."  *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013) (internal quotation marks omitted).  "The party seeking to vacate the award bears the heavy burden of demonstrating sufficient grounds for vacatur."  *Circle Indus. USA, Inc. v. Parke Const. Grp., Inc*., 183 F.3d 105, 109 (2d Cir. 1999).

While the NSA incorporates Section 10 of the FAA, it does not incorporate Section 9 of the FAA as discussed above *supra* II.ii.  *See T.V. Seshan M.D., P.C.*, 2025 WL 3496382, at *6 (noting that Congress did not incorporate Section 9 of the FAA into the NSA); *Jeffrey Farkas, M.D., LLC*, 790 F. Supp. 3d at 138 ("Congress chose not to incorporate [Section] 9 into the NSA. It incorporated only parts of [Section] 10." (quoting *Guardian Flight, L.L.C*, 140 F.4th 271, 276 (5th Cir. 2025))).  As the Court discussed *supra* Section II.b, the NSA does not incorporate Section 9 of the FAA.  Accordingly, the Court cannot confirm the IDR Award pursuant to the NSA, the FAA does not separately provide jurisdiction, and Plaintiff has not otherwise established the Court's jurisdiction to enforce the IDR Award.  *See Spiel, Md, Pa*, 2025 WL 3459719, at *4 (finding that the court lacked jurisdiction to confirm the IDR award and dismissing the plaintiff's claims under Section 9 of the FAA); *Worldwide Aircraft Servs. Inc. v.*

*Freedom Life Ins. Co. of Am.*, No. 25-CV-1158, 2025 WL 3551397, at \*3 (M.D. Fla. Dec. 11, 2025) ("[T]his [c]ourt lacks subject matter jurisdiction to enforce or confirm an IDR award under the NSA" because "the NSA does not create a private cause of action to enforce IDR awards under § 9 of the FAA.").

In addition, the NSA does not incorporate Section 12, the FAA's procedural rules for vacating an award and these rules therefore do not apply to Defendant's cross-motion to vacate. *See Med-Trans Corp. v. Cap. Health Plan, Inc.*, 700 F. Supp. 3d 1076, 1083 (M.D. Fla. 2023) (holding that "[t]he FAA's procedural requirements for vacating an award, such as 9 U.S.C. § 12's requirement of a motion filed within three months, are not incorporated [into the NSA]"), *aff'd sub nom.*, *Reach Air Med. Servs. LLC v. Kaiser Found. Health Plan Inc*., 160 F.4th 1110 (11th Cir. 2025). Because the NSA does not incorporate the FAA's procedural rules, including those regarding a statute of limitations and the NSA does not include a statute of limitations for vacating an IDR Award, the default statute of limitations of 28 U.S.C § 1658(a) applies. *See Jones v. R.R. Donnelley & Sons Co*., 541 U.S. 369, 371(2004) (explaining that Congress "enacted a catchall [four]-year statute of limitations for actions arising under federal statutes enacted after December 1, 1990"); *Spira v. J.P. Morgan Chase & Co*., 466 F. App'x 20, 23 n.3 (2d Cir. 2012) (noting that Section 1658's "four-year limitations period applies to all civil actions arising under statutes enacted after December 1, 1990 . . . except as otherwise indicated"); *Gupte v. Uber Technologies, Inc*., No. 24-CV-02037, 2025 WL 904741, at \*5 (D. Conn. Mar. 24, 2025) (holding that "[t]hough [the applicable] statute itself does not contain a statute of limitations, [it is] subject to the four-year catch-all statute of limitations in 28 U.S.C. § 1658(a)"), *report and recommendation adopted*, No. 24-CV-02037, 2025 WL 1144763 (D. Conn. Apr. 18, 2025).

34

The certified IDR entity issued the IDR in Plaintiff's favor for 36226-LT on January 29, 2024.  (Compl. ¶ 16.)  Defendant filed its cross-motion to vacate on July 9. 2025, (Def.'s Cross-Mot.), within Section 1658(a)'s catch-all four-year statute of limitations period.  Therefore, Defendant's motion was timely.  *See Vega-Ruiz v. Northwell Health*, 992 F.3d 61, 64 (2d Cir. 2021) ("[Section 1658 provides a] 'uniform federal statute of limitations' that applies when a federal statute fails to set its own limitations period"  (quoting *Jones*, 541 U.S. at 380)); *Gupte*, 2025 WL 904741, at *5 (applying Section 1658(a)'s four-year catch-all statute of limitations where the relevant federal statute did not contain its own limitations period).

As set forth *supra* in section II.b.ii, the NSA does not expressly or implicitly incorporate section 9 of the FAA, and the FAA confers no independent jurisdiction.  Therefore, the Court lacks jurisdiction and cannot enforce the IDR Award.  Because Plaintiff lacks standing to bring an NSA claim for Defendant's denial of 36226-LT, the Court declines to address the merits of the motion to vacate.  *See Molecular Dynamics, Ltd.*, 143 F.4th at 70 (affirming a district court's dismissal of a petition to vacate a foreign arbitral award for lack of subject matter jurisdiction and not addressing any merits or substantive vacatur arguments because the jurisdictional defect precluded reaching those issues); *Westmoreland Capital Corp. v. Findlay*, 100 F.3d 263, 269 (2d Cir. 1996) (affirming dismissal for lack of subject-matter jurisdiction and stating that because jurisdiction was lacking, the court did not evaluate the district court's alternative merits rulings).

### III.  Conclusion

For the reasons discussed above, the Court grants Defendant's motion to dismiss this case and denies Plaintiff's cross-motion to confirm the IDR Award.

Dated: April 1, 2026
      Brooklyn, New York

                       SO ORDERED:


                            s/MKB
                       MARGO K. BRODIE
                       United States District Judge